UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Marie Devin


    v.                                    Civil No. 08-cv-242-PB

Michael J. Astrue, Commissioner,
Social Security Administration


**REPORT AND RECOMMENDATION**


    Before the court for a recommendation of disposition is an appeal from a final decision by the Commissioner of the Social Secuirty Administration ("SSA") denying plaintiff Marie Devin's application for benefits.  See 42 U.S.C. § 405(g) (Supp. 2008) (providing for district court review of final decisions of the SSA); see also 28 U.S.C. § 636(b)(1)(B) (authorizing magistrate judge review).  Plaintiff has filed a motion to reverse or, in the alternative, to vacate the decision and remand for further consideration of vocational expert evidence (document no. 8). Defendant filed a motion to affirm the Commissioner's denial of benefits (document no. 10).  For the reasons set forth below, I recommend that plaintiff's motion for a remand be granted.

Discussion

**1.  Background**

Pursuant to this court's local rules, see United States District Court for the District of New Hampshire Rule 9.1(d), the parties filed a joint statement of facts which are part of the record and which I have reviewed.  Only those facts relevant to the disposition of this matter are discussed below, as needed.

**2.  Standard of Review**

An individual seeking social security benefits has a right to judicial review of a decision denying the application.  See 42 U.S.C. § 405(g) (Supp. 2008).  The court is empowered to affirm, modify, reverse or remand the decision of the Commissioner, based upon the pleadings and transcript of the record.  See id.  The factual findings of the Commissioner shall be conclusive, however, so long as they are supported by "substantial evidence" in the record.  See Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" is "'more than a mere scintilla.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938));

see also Currier v. Sec'y of HHS, 612 F.2d 594, 597 (1st Cir. 1980).  The Commissioner is responsible for resolving issues of credibility and drawing inferences from the evidence in the record.  See Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981) (reviewing court must defer to the judgment of the Commissioner).  The Court does not need to agree with the Commissioner's decision but only to determine whether it is supported by substantial evidence.  See id.  Finally, the court must uphold a final decision denying benefits unless the decision is based on a legal or factual error.  See Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

### 3. Plaintiff's Disability

Plaintiff claims she is disabled under the Social Security Act, because the combination of her multiple sclerosis and depression have prevented her and will continue to prevent her for more than 12 months, from engaging in substantial gainful activity.  See 42 U.S.C. § 423(d)(1)(A) (defining disability).  In this action, plaintiff challenges the administrative law judge's ("ALJ") analysis at steps 4 and 5 of the sequential protocol for evaluating disability.  See 20 C.F.R. § 404.1520

(a)(4) (setting forth disability determination procedure); see also Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982) (outlining the 5 step protocol followed to determine disability). Plaintiff argues the ALJ erred in not obtaining expert testimony from a vocational specialist to better assess her residual functional capacity ("RFC"). The critical issue here is whether plaintiff has nonexertional limitations which required defendant to obtain evidence from a vocational specialist, rather than just relying on the medical-vocational guidelines, to determine the availability of jobs for purposes of assessing her disability. See 20 C.F.R. § 404.1520(a)(4)(iv) & (v) (factoring RFC, age, education and past relevant work to determine whether the impairments render claimant disabled); see also 20 C.F.R. Pt. 404, Subpt. P, App. 2 (tables determining whether someone is disabled based on RFC, age, education and experience). Plaintiff contends the ALJ was required to obtain vocational expert evidence, while defendant argues such evidence was not necessary and the ALJ's decision is supported by substantial evidence.

It is undisputed that plaintiff met her burden of proving that she has not engaged in substantially gainful work since April 30, 2005, her alleged onset date, and that she is severely

impaired by the combined effect of her multiple sclerosis and depression.  See Certified Record of the Proceedings before the SSA ("CR") at 24 (finding plaintiff had met steps 1 and 2); see also Buxton v. Astrue, Civil No. 08-cv-20-SM, slip op., 2008 WL 4287863, *2 (D.N.H. Sept. 16, 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987) to place the burden of proving a disabling impairment on claimant).  At step 3, the ALJ found plaintiff's impairments did not meet or equal any of the criteria identified in the regulations listing impairments, which rendered her not disabled at step 3 and required the ALJ to proceed to step 4 in the disability analysis.  See CR at 25-26 (citing 20 C.F.R., Part 404, Subpt. P, App. 1, §§ 11.09 & 12.04); see also 20 C.F.R. § 404.1520(a)(4)(iii).  At step 4, the ALJ concluded that plaintiff retained the RFC to perform sedentary work that is simple, repetitive and unskilled, but that she could not return to her former employment.  See CR at 27-29.  The ALJ then proceeded to step 5 to determine whether other jobs were available in the national economy to which plaintiff could adjust given her RFC.  Relying on the medical-vocational guidelines set forth in the regulations, he concluded that plaintiff was not disabled.  See CR at 29-30 (citing 20 C.F.R., Part 404, Subpt. P,

App. 2, Rule 201.28).

Plaintiff does not dispute the ALJ's finding that she was limited to simple, repetitive, unskilled work, but she asserts she was further limited by the requirements that she needed a flexible job with an understanding boss, to accommodate her fatigue and enable her to work at her own pace.  These additional limitations were nonexertional, which plaintiff contends required the ALJ to obtain evidence from a vocational expert to better understand and implement the guidelines set forth in the regulations, rather than simply relying on the vocational grid. See id.  Defendant counters that plaintiff was not further impaired by these nonexertional limitations, so the ALJ was not required to obtain the additional vocational evidence and his decision based solely on the grid is supported by substantial evidence.  As demonstrated below, the record reflects that additional evidence is needed here before a disability determination may be properly made.

The rules provide that in certain cases where nonexertional limitations exist, expert vocational evidence is needed to interpret the grid and assist the ALJ in determining what work remains available.  See Heggarty v. Sullivan, 947 F.2d 990, 996

(1st Cir. 1991) (citing authority); see also West's Soc. Sec. Reporting Serv. - Rulings: 1983-1991 at 41 (1992) (Soc. Sec. Ruling ("SSR") 83-14 entitled "Capability to Do Other Work - the Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments"). When "[n]o table rule applies to direct a conclusion of "Disabled" or "Not disabled" where an individual has a nonexertional limitation or restriction imposed by a medically determinable impairment, . . . the table rules are used, in conjunction with the definitions and discussions provided in the text of the regulations, as a framework for decisionmaking." Id. at 42. As the First Circuit has explained:

> If a non-strength impairment, even though considered significant, has the effect of only reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability. Yet the more that occupational base is reduced by a nonexertional impairment, the less applicable are the factual predicates underlying the Grid rules, and the greater the need for vocational evidence.

Heggarty, 947 F.3d at 996 (quoting Ortiz v. Sec'y of HHS, 890 F.2d 520, 524 (1st Cir. 1989). Because the nonexertional impairment may significantly affect claimant's ability to perform the full range of jobs at her strength level, and because the SSA

7

bears the burden of proving jobs are available that claimant can do with her limitations, vocational expert testimony is usually required to determine the appropriate occupational base.  See id. (citing Ortiz, 890 F.2d at 524 and Lugo v. Sec'y of HHS, 794 F.2d 14, 17 (1st Cir. 1986) (per curiam)); see also Buxton, 2008 WL 4287863 at *4 ("'if the applicant has nonexertional limitations . . . that restrict his ability to perform jobs he would otherwise be capable of performing, then the Grid is only a framework to guide the decision.'" (quoting Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001)).

In other words, a decision on disability usually cannot be directed by the matrix rules set forth in Appendix 2 when both an exertional and a nonexertional limitation affect plaintiff's RFC.  Those rules direct a conclusion when the claimant satisfies the specific criteria set forth in the tables; however, when the claimant either has an exertional RFC that does not coincide with the defined ranges provided by the regulations or has a nonexertional limitation, vocational evidence should be consulted to assess how the problem impacts the occupational base.  See SSR 83-12 & 83-14; see also 20 C.F.R. Pt. 404, Subpt. P. App. 2, § 200.00(e)(2) (explaining how with nonexertional limitations the

grid rules typically provide only a framework for analysis of, rather than directing a conclusion on, the disability determination).

The record demonstrates that the ALJ erred in relying solely on Rule 201.28 to direct his finding of no disability.  <u>See</u> 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(b) (requiring further consideration of what types of jobs may be needed when a claimant does not satisfy every criteria of a rule).  The evidence shows that plaintiff's multiple sclerosis does cause her to tire easily and that she would benefit from a schedule that accommodates her fatigue.  For example, in July 2005, Drs. Ellen Crouse and Caitlin Macaulay, neuropsychologists at Dartmouth Medical School, evaluated plaintiff.  <u>See</u> CR at 606–12.  The doctors found her "symptoms of mild depression and anxiety, combined with fatigue, are likely to negatively affect her daily functioning," and recommended, among other things, she structure her day "to allow ample time to complete tasks and to take periodic breaks to renew her energy . . . [and] to work on complex or cognitively challenging tasks when she is least fatigued."  <u>Id.</u> at 611–12.

Similarly, plaintiff's treating physicians at Dartmouth Hitchcock Medical Center ("DHMC") Multiple Sclerosis Center

concluded she was negatively impacted by her fatigue.  Plaintiff most frequently saw Brant Oliver, a nurse practioner in neurology there.  He noted on several occasions that plaintiff was not working because she felt she had no choice because of her severe fatigue.  See CR at 620 (11/05), 808 & 810 (12/06), 847-56 (04/07).  Although the ALJ discounted NP Oliver's diagnosis because nurse practitioners are not a listed "acceptable medical source," see 20 C.F.R. § 404.1513(a), plaintiff correctly points out that he summarized the opinions of the team working at DHMC's Multiple Sclerosis Center which included NP Oliver, two medical doctors and one PhD.  See CR at 855; see also 20 C.F.R. § 404.1527 (evaluating medical opinion evidence).  That team concluded that plaintiff's functional capacity evaluation results indicated "a self-paced sedentary work level capacity" and that an occupational medicine evaluation would be beneficial.  See CR at 856.  This evidence is particularly persuasive because it reflects the opinions of plaintiff's treating physicians.  See 20 C.F.R. § 1527(d) (explaining how different opinions are weighed).

Another Functional Capacity Evaluation was done in October 2006 by an industrial rehabilitation therapist, Bradford Shedd.  See id. at 780-81.  Mr. Shedd also concluded that plaintiff's

physical performance was inhibited by "her complaints of fatigue and discomfort," that she demonstrated a need for a "self paced sedentary physical demand level" which would vary daily, and that her physical demand capacity appeared unlikely to improve. See id. at 781.

On the other hand, plaintiff or her records were evaluated by several other doctors, who consistently concluded she did not suffer from any significant cognitive impairment, and that her self-reported concerns about lack of concentration, understanding and attention were not that credible. See CR at 791-92 (Dr. Warman), 439-41 & 793-803 (Dr. Schneider), 817-24 (Dr. Gumbinas), 857 (Dr. Babkes) & 858-59 (Dr. Chalal). The doctors focused on plaintiff's psychological profile and consistently found a mild depressive effect of the disease which, however, did not prevent plaintiff from functioning well in a variety of daily activities. These psychiatric evaluations did not preclude a finding of fatigue, and plaintiff's cognitive health did not eliminate the adverse physical effects of her multiple sclerosis that impose nonexertional limitations on her ability to work. As Dr. Warman acknowledged, plaintiff's symptoms of depression would make it difficult to maintain attendance or follow schedules, and he

recommended that her "neuropsychological testing from [DHMC] be referred to in determining her cognitive functioning."  CR at 791-92.  Dr. Gumbinas, who discounted the opinions of plaintiff's treating physicians at DHMC, acknowledged that she "does have some fatigue" even though her "formal neurological examination is normal."  CR at 818.  Similarly, Dr. Chalal found plaintiff still fatigued despite her insignificant psychiatric complaints.  See id. at 858-59.

   This medical evidence demonstrates that plaintiff in fact does have nonexertional limitations in addition to her exertional limitations.  There is evidence in the record which supports plaintiff's claim that she needs a flexible, self-paced job with an understanding boss.  It is undisputed that the ALJ did not elicit vocational evidence in the form of a report or testimony.  The ALJ should not have relied simply on the grid at step 5 to determine whether jobs exist that plaintiff could perform, because the tables do not reflect an occupational base that is circumscribed by her individual restrictions.  The rules require vocational evidence in these circumstances.  See SSR 83-12 & 83-14.  Accordingly, I recommend that this case be remanded to the ALJ for further consideration of plaintiff's RFC and the

availability of jobs in the national economy considering that RFC, with the guidance and assistance of a vocational expert. See Arocho, 670 F.2d at 376 (requiring "relevant testimony that substantial work exists . . . commensurate with appellant's particular capacities"); see also Buxton, 2008 WL 4287863 at *5 (finding error in ALJ's reliance on the Grid without reference to vocational evidence to assess the nonexertional limitations on claimant's ability to work).

## CONCLUSION

For the reasons set forth above, I recommend that plaintiff's motion to reverse or remand (document no. 8) be granted and defendant's motion to affirm (document no. 10) be denied.  Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

```
Date:  May 6, 2009

cc:   Janine Gawryl, Esq.
      Gretchen Leah Witt, Esq.
```